UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ZEEWE DAKAR MPALA, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:13-cv-01114 (VLB) |
| | : | |
| GATEWAY COMMUNITY COLLEGE, ET AL., | : | |
| Defendants. | : | May 19, 2014 |

ORDER DENYING THE PLAINTIFF'S
MOTION TO AMEND THE COMPLAINT [DKT. 28]

I.    Introduction

The *pro se* Plaintiff[1] initially brought this action on August 2, 2013 against Defendants Gateway Community College ("Gateway"), Dorsey Kendrick, Cary Broderick, Jim Buccini,[2] and Clara Ogbaa in their individual capacities alleging that the Defendants banned him from the college campus and library due to his sexual orientation, subjecting him to sexual harassment in violation of Titles I and

---

[1] Even though the Plaintiff is appearing *pro se*, he has extensive experience litigating civil rights cases.  He has filed several complaints in this Court against a variety of public officials related to his use of various libraries across the state. *See Mpala v. Hartford Public Library, et al.*, 3:13-cv-1306-VLB; *Mpala v. New Haven, et al.*, 3:12-cv-01580-VLB.  He also has two other pending cases where is he represented by counsel.  *Mpala v. Sires*, 3:13-cv-01226-AVC; *Mpala v. Funaro, et al.*, 3:13-cv-00252-WIG.  Finally, he has one appeal currently pending before the Second Circuit Court of Appeals in *Mpala v. New Haven, et al.*, 3:11-cv-01724-VLB, and at least two other pending interlocutory appeals.  The Plaintiff has also represented that he has other litigations pending in other district courts in neighboring states.  [Dkt. 42, Motion for Reconsideration].

[2] This Defendant's name appears written as Buccini and Buccino in this case. The Court adopts the spelling in the Defendant's email signature and will refer to him throughout as Buccini.

1

VII of the Civil Rights Act of 1964 ("Title II" and "Title VII"), and for violating the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60(a)(8) ("CFEPA"), and Connecticut's public accommodation statute, Conn. Gen. Stat. § 46a-64.  [Dkt. 1, Complaint].  On October 21, 2013, the Defendants moved to dismiss the Complaint on several grounds.  [Dkt. 19, Defendants' Motion to Dismiss the Complaint].  Instead of opposing the Defendants' Motion to Dismiss, the Plaintiff sought leave to amend his Complaint on February 13, 2014.  [Dkt. 28, Motion to Amend the Complaint].  The Court views this Plaintiff's motion to amend as an abandonment of the claims in the initial Complaint in favor of the allegations contained in the proposed Amended Complaint.  The Defendants filed an opposition to the motion to amend on the grounds that amending the complaint would be futile as the proposed Amended Complaint could not sustain a motion to dismiss.  [Dkt. 39, Memorandum in Opposition to Motion to Amend the Complaint].  In the proposed Amended Complaint, the Plaintiff did not alter in any substantive manner his factual allegations, but instead substituted the legal bases for his suit; he now alleges violations of 42 U.S.C. § 1983 ("Section 1983") for claims arising under the First Amendment and the Equal Protection clause of the Fourteenth Amendment, and for intentional infliction of emotional distress and negligent hiring under Connecticut tort law.  [Dkt. 28-1, Amended Verified Complaint].  The Amended Complaint also names defendant Dorsey Kendrick, President of Gateway, in her official as well as her individual capacity.  [Dkt. 28-1].

For the reasons that follow, the Plaintiff's motion to amend the complaint is denied and the case is dismissed without prejudice to filing a motion to reopen within twenty-one (21) days of this order pursuant to the instructions below.

## II.   Facts

The Proposed Amended Complaint consists of a chronological narrative, as opposed to individual counts consisting of the facts which constitute the elements of each claim, in which the Plaintiff alleges several claims arising out of his expulsion from the Gateway Community College library.  The Plaintiff alleges that he was a non-student visitor of Gateway's library and that he had a personal relationship with Clara Ogbaa, the chief librarian.  [Dkt.28-1, p. 3].  The Plaintiff alleges that on more than on occasion, he was invited to Ogbaa's homes in Meriden and Hamden.  On one occasion, while he was at her home in Meridan, the Plaintiff alleges that she prepared dinner and gave the Plaintiff a six pack of beer. [*Id.*].  While at Ogbaa's house, the Plaintiff alleges that he wore a sleeveless shirt, a shirt that he normally wore in hot weather due to his perspiration problem, but that Ogbaa told him he would need to dress more appropriately if he wanted to continue to use the library.  [*Id.*].  In response, Mpala stated that he preferred to dress "unisexually," to which Ogbaa alleged "began cooing 'are you a girl' repeatedly."  [*Id.*].  The Plaintiff also noted that he saw a "grotesque Nigerian Mask" at Ogbaa's home, which, according to the Plaintiff, evidenced her belief in

or practice of voodoo.  [*Id.*].[3]  After this discussion, the Plaintiff informed Ogbaa that he wanted to return to New Haven; Ogbaa complied with his request, but prior to leaving, she informed the Plaintiff that "Nigerians are condemned to death for the following offences: Adultery, Indecent exposure, Sexual deviant [sic], etc., and when she said, 'death!' she took her index finger moving it from left to right swiftly! [sic] across her neck."  [*Id.*].

The next time the Plaintiff went to the library, he was dressed in a sleeveless shirt, and Ogbaa allegedly asked the Plaintiff "'didn't I tell you to stop dressing like that!'"  [*Id.* at 4].  The Plaintiff then replied that he was "[b]i [sic] sexual and he will dressed [sic] the way he pleases!"  [*Id.*].  The Plaintiff then claims he "[o]rdered [Ogbaa] to go back to Nigeria" because of his "xenophobia." [*Id.*].  Then, he alleges that "Ogbaa had [him] banned from the School Library only!"  [*Id.*].  On October 4, 2012, Ogbaa sent an email to the Plaintiff, which states in its entirety that "[y]ou do not conform to [Gateway's] library policy and procedures and your level of demands divert library staff members from serving students.  In addition, your behavior in the last couple of weeks has been disruptive and too confrontational.  Our focus right now is to help our students adjust to the new facility, and we hope you will respect that."  [Dkt. 28-1, unnumbered attachment].  Accordingly, the Plaintiff immediately requested that security officer Brian McCarty preserve the library's surveillance footage in preparation of the present litigation.  [*Id.* at 4].  Allegedly, Broderick, an employee

---

[3] As related to the practice of voodoo, the Plaintiff also "feels as though Ogbaa has placed a hex on him . . . because of the continuous problems that [he is] experiencing with the various Libraries."  [*Id.* at p. 5].

of Gateway's Police Department, reinstated the Plaintiff's library privileges at some time prior to June 11, 2013, when the Plaintiff met with Broderick, Ogbaa and Brian Higney, Director of Campus Safety.  [*Id.*].  The complaint does not state the reason for the reinstatement.

The Plaintiff further alleges that when he returned to the library on June 11, 2013, Officer McCarthy, an employee of Gateway, ordered the Plaintiff to leave the library and informed the Plaintiff that if he had any questions about his removal, he should contact Ogbaa or Buccini.  [*Id.* at 4].  Subsequently, the Plaintiff emailed Buccini, Associate Director of Student Development, and inquired as to why he was removed from the library.  [*Id.*].  Buccini responded in two separate emails that he would like to set up an appointment to discuss the matter, but the Plaintiff twice refused his offers to meet and discuss his situation.  [*Id.*]. Accordingly, on June 20, 2013, Buccini sent a letter to the Plaintiff stating "[b]ecause you are a visitor, and not a student, I will forward your email to security and allow them to handle the situation.  I believe they do want to meet with you to address the situation as soon as possible."  [*Id.*].  It appears that after this communication, the Plaintiff received an undated letter from Broderick which stated that the Plaintiff was "no longer permitted on Gateway Community College property."  [*Id.*, unnumbered exhibit].  The letter further stated that

> [i]n addition to being banned from campus, you are
> requested to cease contact with all gateway faculty and
> staff unless you have received consent or approval.
> Your actions and behavior have caused disruption to
> the primary educational purpose of the College.  Due to
> the fact that you are not a student, the College currently
> sees no need for you to visit at this time. . . . This ban

> will remain indefinite.  However, if you wish to appeal
> this, you may schedule an appointment with the GCC
> Police Officer Cary Broderick and Director of Campus
> Safety Brian Higney in one calendar year form the date
> of this letter, and we will review your case at that time.

[*Id.*].  The Plaintiff then filed this suit, claiming that the Defendants banned him

from Gateway's campus because of his dress and/or sexual orientation, and

alleges that the Defendants Gateway and Kendrick were negligent in hiring the

Defendant Ogbaa because they failed to "detect Ogbaa's Homophobia."  [*Id.* at 5-

6].  No specific factual allegations are made against Kendrick with respect to her

involvement in the present matter.

## III.    Legal Standard

"Generally, leave to amend should be freely given, and a *pro se* litigant in

particular should be afforded every reasonable opportunity to demonstrate that

he has a valid claim."  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citations

and internal quotation marks omitted).  "A *pro se* complaint should not be

dismissed without the Court granting leave to amend at least once when a liberal

reading of the complaint gives any indication that a valid claim might be stated."

*Id.* (citations and internal quotation marks omitted).  "However, leave to amend a

complaint may be denied when amendment would be futile."  *Id.* (citations and

internal quotation marks omitted).  "An amendment to a pleading will be futile if a

proposed claim could not withstand a motion to dismiss pursuant to Rule

12(b)(6)."  *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d

83, 88 (2d Cir. 2002) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d

Cir. 1991)).

### a.  Legal Standard for Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Id.* (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)).  On a Rule 12(b)(1) motion, "'the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff.'"  *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)).  "However, where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."  *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999).

### b.  Legal Standard for Failure to State a Claim

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Sarmiento v. United States*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (citations omitted).  "Where a complaint pleads facts that

7

are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citations and internal quotation marks omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal,* 556 U.S. at 679).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal,* 556 U.S. at 679).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal,* 556 U.S. at 678 (citations and internal quotations omitted).

## IV.   <u>Discussion</u>

The Plaintiff brings several federal claims against each of the defendants.

### a.  <u>Section 1983 Claims against Gateway</u>

In his Amended Complaint, the Plaintiff brings a claim against Gateway Community College under Section 1983.  Section 1983 provides that "[e]very

*person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subject, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added).  The Supreme Court has explicitly held that a "State is not a person within the meaning of Section 1983."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).  And, it is "clearly established that the Eleventh Amendment bars section 1983 claims against state agencies."  *P.C. Conn. Dep't of Children & Families*, 662 F. Supp. 2d 218, 226 (D. Conn. 2009) (citing *Quern v. Jordan*, 440 U.S. 332 (1979)).  A claim against a state agency or state official is essentially a claim against the state, implicating the Eleventh Amendment because the state is the "real, substantial party in interest."  *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Huang v. Johnson*, 251 F.3d 65, 69-70 (2d Cir. 2001).  Therefore, to state a claim under Section 1983, a plaintiff must allege facts showing that the defendants are "persons" acting under the color of state law.  Like other state agencies, Gateway, a public community college, is not a "person" within the meaning of Section 1983.  *See Gaby v. Bd. of Trustees of Community Tech. Colleges*, 348 F.3d 62, 63 (2d Cir. 2003) (per curiam) (noting decisions holding that state universities and their boards of trustees are not persons within the meaning of Section 1983); *Vega v. Univ. of Conn. Med. Ctr.*, No. 3:11cv1864 (AVC), 2012 WL 1825381, at *1 (D. Conn. May 16, 2012) (holding that University of Connecticut Medical Center is not a

person under Section 1983); *Stewart v. John Dempsey Hospital*, No. 3:03cv1703 (WWE), 2004 WL 78145, at *2 (D. Conn. Jan. 9, 2004) (holding that John Dempsey Hospital University of Connecticut Health Center is not a person within the meaning of section 1983).  Accordingly, no claim can be made against Gateway under Section 1983 and amending the Complaint to include such a claim would be futile.

### b.  Section 1983 Claims against Kendrick in her Official Capacity

Generally, claims against state officials in their official capacities are not cognizable under Section 1983 because "suits against states and their officials seeking damages for past injuries are firmly foreclosed by the Eleventh Amendment."  *Ward v. Thomas*, 207 F.3d 114, 19 (2d Cir. 2000) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)); *Stack v. City of Hartford*, 170 F. Supp. 2d 288, 292 (D. Conn. 2001) (dismissing claims against a state trooper in his official capacity as being barred by the Eleventh Amendment); *Stancuna v. Sherman*, 563 F. Supp. 2d 349, 354 (D. Conn. 2008) ("official capacity claims for damages are not cognizable under § 1983").  Therefore, there can be no recovery for damages for past injuries under Section 1983 against Kendrick in her official capacity.[4] Amending the Complaint to include this claim, therefore, would also be futile.

---

[4] While in certain circumstances a state official may be sued in his or her official capacity for prospective injunctive relief, any claim for such relief against Kendrick in her official capacity in this case would also fail because any such claim must be supported by sufficient facts to allege an ongoing violation of federal law.  *See State Emps. Bargaining Agent Coal v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007); *Ex parte Young*, 209 U.S. 123 (1909).  As will be discussed *infra*, the

### c.  Remaining Constitutional Claims

Aside from claims against Gateway and Kendrick in her official capacity, the Plaintiff brings other constitutional claims against the other Defendants in their individual capacities for violations of his First Amendment rights and denial of Equal Protection.

#### i.  First Amendment Claims

Since the Plaintiff does not complain about an explicit library or school policy that violates his rights under the First Amendment, the only potential claim in the Amended Complaint is one for retaliation for exercising his First Amendment Rights.  In order to prove a First Amendment retaliation claim under Section 1983, a private citizen must prove that: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right."  *Tylicki v. Schwartz*, 401 F. App'x 603, 604 (2d Cir. 2010) (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)).  Based on this standard, the Amended Complaint as written does not satisfy the necessary elements to succeed in a claim for First Amendment retaliation.

---

Plaintiff has failed to allege sufficient facts in this case to demonstrate an ongoing violation of federal law.

1. <u>**Protected Interest**</u>

First, it is not clear from the Amended Complaint whether the Plaintiff was actually engaged in any protected activity.  While the standard for protected speech has often been characterized as one related to issues of public concern, the Court cannot determine what speech the Plaintiff claims to have engaged in to support his claim for retaliation, much less whether it was a matter of public concern.  *See Dunn & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759 (1985) ("It is speech on matters of public concern that is at the heart of the First Amendment's protection." (citations omitted)).  If the Plaintiff's claim is that he was objecting to the unlawful actions of a state employee, namely Ogbaa, then such activity could be potentially protected under the First Amendment.  *See Casciani v. Nesbitt*, 659 F. Supp. 2d 427, 459 (W.D.N.Y. 2009), *aff'd*, 392 F. App'x 887 (2d Cir. 2010).  However, the Plaintiff has not alleged specific facts allowing this Court to infer that Ogbaa was engaged in any illegal activity.  Moreover, reasonable restraints on even protected public speech are permissible.  *Friends of Animals, Inc. v. City of Bridgeport,* 833 F. Supp. 2d 205, 217 (D. Conn. 2011) (holding reasonable time, place, and manner restriction of first amendment rights permissible), *aff'd sub nom. Zalaski v. City of Bridgeport Police Dep't,* 475 F. App'x. 805, 2012 WL 3765016 (2d Cir.2012) (summary order).  A private citizen's right to be critical of a government official does not necessarily extend to permit loud, verbal behavior in a library, which has the potential of disrupting the quiet atmosphere sought by other patrons.  *See Lashley v. Wakefield*, 483 F. Supp. 2d

297, 301 (W.D.N.Y. 2007).  Therefore, it is unclear what speech the Plaintiff alleges to be protected with regard to his verbal altercation with Ogbaa.

It is also possible that the Plaintiff intended his freedom of expression claim to be tied to his attire.  The Second Circuit has held that while, generally, attire is not protected as symbolic speech, limited instances of expression are protected when the symbolic activity, such as attire, is "sufficiently imbued with the elements of communication to fall within the scope of the First and Fourteenth Amendments, . . . which necessarily requires a narrow, succinctly articulable message . . . with a great likelihood that the message will be understood by those viewing it."  *See Zalewska v. Cnty. of Sullivan, N.Y.*, 316 F.3d 314, 319 (2d Cir. 2003) (citations and internal quotation marks omitted).  However, nothing in the Amended Complaint provides the requisite detail for this Court to infer that the Plaintiff's attire in this case constituted symbolic action, meriting First Amendment protection.  The Plaintiff does not allege that a sleeveless tee shirt is symbolic of any particular principle, belief or affiliation nor does he allege that it otherwise conveys any particular message.  The Amended Complaint, therefore, could not be sustained on this ground either.

In sum, it is impossible for the Court to conclude that the Plaintiff has sufficiently demonstrated he was engaging in protected activity because it is unclear what speech he believes merits First Amendment protection.  Further, the Plaintiff has failed to plead sufficient facts for the Court to find that the speech, which could conceivably be inferred from the Proposed Amended Complaint to serve as the basis for the action, is protected speech.

13

### 2.  <u>Causal Connection</u>

To successfully plead a First Amendment retaliation claim, a plaintiff must also demonstrate that his protected speech "played a substantial part" in the adverse action he suffered.  *See Curley*, 268 F.3d at 73.  Accordingly, a plaintiff generally needs to allege evidence showing that the state actor was motivated in retaliating against the protected speech.  *Id.*  In this Circuit, a plaintiff can use the temporal proximity between engaging in the protected activity and experiencing the adverse impact to show that the protected activity was the motivation, and when analyzing claims of temporal proximity, courts must draw permissible inferences based on the context of the particular case.  *See Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001); *Simmons v. Adamy*, No. 08-cv-6147L, 2013 WL 6622907, at *1 (W.D.N.Y. Dec. 17, 2013).  In any event, since the Court cannot determine what speech the Plaintiff alleges comprised the protected activity in his retaliation claim, the Court cannot begin the causal connection analysis.

If the Plaintiff's claim is that divulging his sexual orientation to Ogbaa was the protected speech, he has not alleged sufficient facts to establish that the decision to ban the Plaintiff from the campus was causally related to that disclosure.  There are no facts alleging that Defendants Kendrick, Broderick, and Buccini knew of the Plaintiff's sexual orientation, and, even if they did, there are no factual allegations connecting the decision to ban the Plaintiff from the campus to the verbal disclosure of his sexual orientation.  As to Ogbaa, while the Plaintiff alleges that she knew of the disclosure, the Plaintiff fails to allege any

**14**

facts which would demonstrate that Ogbaa participated in the decision to ban the Plaintiff from the campus; instead,  the Plaintiff only alleges in a conclusory manner that Ogbaa "had Mpala banned from the School Library," without explaining how or when.  This allegation does not constitute a sufficient factual basis to sustain a motion to dismiss.

Moreover, the evidence attached to the Amended Complaint shows that the only reason cited for the Plaintiff's removal from the library was his disruptive behavior.  Therefore, the allegations in the Amended Complaint as currently presented do not sufficiently tie the disclosure of the Plaintiff's sexual orientation or his manner of dress to being barred from the library or campus.  Accordingly, the Plaintiff needs to explain how and why engaging in protected speech resulted in the adverse actions taken against him.  Without these facts, the present claim would not survive a motion to dismiss and amending it as such would be futile.

### 3.   Chilling the Exercise of First Amendment Rights

Finally, a private citizen must allege facts to show that the state actor "effectively chilled" the exercise of his First Amendment rights.  *See Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004).  "To establish this element, it is not enough for the plaintiff simply to show that he changed his behavior in some way; he must show that the defendant intended to, and did, prevent or deter him from exercising his rights under the First Amendment."  *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 221-22 (N.D.N.Y. 2012), *aff'd*, 524 F. App'x 742 (2d Cir. 2013).  However, the Second Circuit has cautioned that "where the

**15**

retaliation is alleged to have caused an injury separate from any chilling effect . . . an allegation as to a chilling effect is not necessary to state a claim. *Gill*, 389 F.3d at 383. Indeed, here, the Plaintiff has alleged that he was barred from the campus and from the library for an indefinite amount of time. While this might constitute an injury, the Plaintiff ignored the Defendants' request to meet with him and discuss the situation. Had the Plaintiff availed himself of the proffered post-deprivation remedy and met with Buccini, the situation might have been remedied sooner and his library privileges restored earlier. In any event, even if the Plaintiff has sufficiently shown an injury resulting from the first amendment retaliation, he has not demonstrated that he was engaging in protected speech, or at least identified that speech, and that there was a causal connection between the speech and the resulting injury. Therefore, the First Amendment retaliation claim would not survive a motion to dismiss.

### ii.  Equal Protection Claims

The plaintiff also brings an equal protection claim in his Amended Complaint. The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all those similarly situated be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "While this clause is most commonly used to bring claims alleging discrimination based on membership in a protected class, it may also be used to bring a 'class of one' equal protection claim." *Prestopnik v. Whelan*, 249 F. App'x 210, 212-13 (2d Cir. 2007) (citations and internal quotation marks omitted).

Based on the allegations in the proposed Amended Complaint, it is unclear whether the Plaintiff is bringing his equal protection claim on a selective enforcement or class of one theory, and it is also difficult to understand whether his equal protection claim is based on his sexual orientation or his manner of dress.  Even so, his equal protection claim would not sustain a motion to dismiss because Plaintiff has failed to allege sufficient facts to establish a violation of the Equal Protection clause under any combination.

### 1.   Selective Enforcement Claim

"Plaintiffs claiming selective enforcement must show both (1) that thy were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Brisbane v. Milano*, 443 F. App'x 593, 594 (2d Cir. 2011) (citations and internal quotation marks omitted).  "Use of an impermissible consideration (such as race) must have been intentional, not merely negligent."  *Id.*  But, "'[d]eliberate indifference' suffices so long as 'the defendant's indifference was such that the defendant intended the discrimination to occur.'"  *Id.* (quoting *Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 141 (2d Cir. 1999)).  In order to survive a motion to dismiss, a plaintiff must allege specific instances when he was singled out for less favorable treatment than similarly situated individuals.  *See Albert v. Corovano*, 851 F.2d 561, 573 (2d Cir. 1988).  Mere conclusory allegations of selective treatment are insufficient to state an equal protection claim.  *Id.*

17

As to the first prong, the Plaintiff does not allege with sufficient particularity how he was treated differently from any other similarly situated individuals.  Instead, he makes the general conclusory allegation devoid of any factual content that Ogbaa only "harasses" the Plaintiff.  [Dkt. 28-1, p. 6].  The Plaintiff fails to offer any factual allegations in support of his claim, such as describing the facts of specific instances where Ogbaa treated heterosexual patrons of the library who were dressed similarly to the Plaintiff or behaving similarly to the Plaintiff differently than she treated Mpala.  Without these facts, the Plaintiff has not sufficiently alleged the factual predicate for his Equal Protection claim.  *See, e.g., Christian v. Town of Riga*, 649 F. Supp. 2d 84, 94 (W.D.N.Y. 2009) (dismissing selective enforcement claim because plaintiff failed to plead facts showing disparate treatment to similarly situated individuals).

Related to the second prong, a bare allegation of discriminatory animus is not enough to render an equal protection claim sustainable.  *See, e.g., Liang v. City of New York*, No. 10-cv-3089 (ENV)(VVP), 2013 WL 5366394, at *11 (E.D.N.Y. Sept. 24, 2013).  Conclusory allegations of intentional discrimination, "without evidentiary support or allegations of particularized incidents, do[] not state a valid claim and so cannot withstand a motion to dismiss."  *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 470 (2d Cir. 2006) (citations and internal quotation marks omitted).

Here, the Plaintiff has not pled any facts to support his assertion that he was targeted by the Defendants for either his attire or his sexual orientation for selective enforcement of library regulations.  Furthermore, there are no

allegations that any of the Defendants, except for Defendant Ogbaa, were even aware of his sexual orientation or the manner in which he was dressed on the day he was initially removed from the library.  Moreover, he has not pled any facts to demonstrate that Ogbaa had any role in the decision to ban him permanently from the library or the campus.  The Plaintiff also fails to allege any facts that demonstrate that any of the Defendants were motivated by animus towards his sexual orientation; instead, he merely concludes that they banned him because of it.  However, pleading legal conclusions without a factual predicate that leads to that conclusion is impermissible to sustain a motion to dismiss.  Accordingly, to properly amend the pleading, the Plaintiff must allege the facts that lead him to the conclusion that the Defendants treated the Plaintiff differently because of some impermissible consideration, such as his sexual orientation or the manner in which he was dressed.

### 2.  "Class of One" Claim

The Plaintiff's proposed Amended Complaint may also be one brought under a "class of one theory" based on the manner in which he was dressed.  "In a 'class of one' case, the plaintiff uses the existence of persons in similar circumstances who received more favorable treatment than the plaintiff . . . to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain."  *Prestopnik*, 249 F. App'x at 212-13 (citations and internal quotation marks omitted).  "To prevail on a 'class of one' equal protection claim, the plaintiff must

demonstrate that [he was] treated differently than someone who is *prima facie* identical in all relevant respects."  *Id.* at 213 (citations and internal quotation marks omitted).

> This requires a showing that the level of similarity between the plaintiff and the person(s) with whom [he] compares [himself] is extremely high—so high (1) that no rational persons could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy, and (2) that the similarly in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted as the basis of a mistake.

*Id.* (citations and internal quotation marks omitted).

Here, the Plaintiff only asserts that he "is similarly situated in dress to others [sic] non student visitors whofrequently [sic] enter [Gateway's] Library . . . ."  [Dkt. 28-1, p. 6].  This conclusory allegation lacks sufficient factual detail to establish the "extremely high degree of similarly" between the Plaintiff and others necessary to bring a class of one claim.  Specifically, the Plaintiff fails to allege any facts that describe his attire or the attire of others with whom he claims a similarity.  Instead of pleading the legal conclusion that he was similarly situated, the Plaintiff is required to plead the facts that lead to that conclusion.  Without pleading the facts, the claim would not sustain a motion to dismiss.  Moreover, the Plaintiff does not plead any facts regarding how the treatment differed between him and the allegedly similarly-situated others.  Without pleading the facts as to how they were dressed and how they were treated, his claim must fail. Accordingly, permitting the Plaintiff to amend the Complaint as proposed would

be futile because his Section 1983 claims against the Defendants for Equal

Protection violations could not sustain a motion to dismiss.

### iii.   Personal Involvement in Section 1983 Claims

Finally, "[i]t is well settled in this Circuit that personal involvement of

defendants in alleged constitutional deprivations is a prerequisite to an award of

damages under § 1983." *Johnson v. Newburgh Enlarged School Dist.*, 239 F.3d

246, 254 (2d Cir. 2001) (citations and internal quotation marks omitted).

> **Personal involvement of a supervisory official may be
> established by evidence that: (1) the [official]
> participated directly in the alleged constitutional
> violation, (2) the [official], after being informed of the
> violation through a report or appeal, failed to remedy the
> wrong, (3) the [official] created a policy or custom under
> which unconstitutional practices occurred, or allowed
> the continuance of such a policy or custom, (4) the
> [official] was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5)
> the [official] exhibited deliberate indifference to the
> rights of [others] by failing to act on information
> indicating the unconstitutional acts were occurring.**

*Id.* (citations and internal quotation marks omitted).

The Plaintiff fails to adequately plead how each of the Defendants

participated in causing, either directly or indirectly, the alleged constitutional

violations.  As to Ogbaa, the Plaintiff has not alleged any facts establishing that

she was involved in the ultimate determination to bar the Plaintiff from the library

and the campus.  Instead, the Amended Complaint states that "Ogbaa had Mpala

banned from the School Library only!"  [Dkt. 28-1, p. 4].  While the Plaintiff alleges

that an email from Ogbaa sent on October 4, 2012 served as the basis for being

barred from the library, that email only states that she hoped the Plaintiff would respect that the focus of the library staff is to serve the needs of the students. [*Id.* at unnumbered exhibit].  Nowhere does that email state that the Plaintiff was barred from the library.  Therefore, no factual allegations are contained in the Amended Complaint that show Ogbaa had any involvement in the ultimate decision to bar the Plaintiff from the library or the campus.

As to Defendant Broderick, the Plaintiff attached a letter from Broderick stating that Mpala was banned from the campus.  However, no facts in the Amended Complaint and no information contained in that letter show that Broderick was aware of the Plaintiff's sexual orientation, and, therefore, the Plaintiff has not alleged any facts showing that the Defendant discriminated against the Plaintiff on that basis.

As to Defendant Buccini, the Plaintiff has not alleged any facts to establish that he had any knowledge of the Plaintiff's sexual orientation, or any involvement in the decision to ban the Plaintiff from campus at the time the decision was made.  The only allegation against Buccini is that he offered to meet with the Plaintiff to try to resolve the dispute.  These allegations do not in any manner link the ultimately alleged constitutional deprivation to the Defendant's actions.

Finally, as to Defendant Kendrick, the Plaintiff has only alleged that she served as president of Gateway at all times relevant to the issues in the Amended Complaint.  The Plaintiff has not alleged any facts demonstrating that Kendrick

22

had any personal involvement with the Plaintiff or the decision to ban the Plaintiff from the campus.  If the Plaintiff attempts to connect Defendant Kendrick to the constitutional violation by her supervisory role, he must allege facts showing that Kendrick had some knowledge or involvement in the decision to ban the Plaintiff from the campus, that she failed to remedy the violation, that she created or permitted a policy under which the Plaintiff was wrongfully banned, that she was grossly negligent in supervising her subordinates who committed the wrongful acts, or that she exhibited deliberate indifference by failing to act on information indicating that an unconstitutional violation occurred.  The Plaintiff, however, has failed to make any such factual allegations.

Accordingly, the Plaintiff's proposed Amended Complaint does not sufficiently allege the direct involvement of any of the named Defendants to the alleged constitutional deprivation to maintain a Section 1983 claim.  Therefore, amending the Complaint would be futile because the Amended Complaint could not sustain a motion to dismiss.

### d.  State Law Claims

Since the federal claims in the proposed Amended Complaint would be dismissed, the Court would decline to exercise supplemental jurisdiction over the Plaintiff's remaining state law claims.  Pursuant to 28 U.S.C. § 1367, this Court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction."  The Supreme Court has ruled that "[n]eedless decisions of state law should be avoided both as a

matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  Under *Gibbs*,

> federal courts should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

The Second Circuit has approvingly noted that "when all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them *without* prejudice."  *Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 103 (2d Cir. 1998).  Therefore, it is well within this Court's discretion to decline to exercise supplemental jurisdiction over the state law claims in this case should all of the federal claims be dismissed.  Accordingly, it would be futile to amend the Complaint as proposed because none of the federal claims would survive, and this Court would refuse to exercise supplemental jurisdiction over the remaining state law claims.

**V.    Conclusion**

Accordingly, since amending the Complaint as proposed in the Plaintiff's [Dkt. 28] Motion to Amend the Complaint would be futile and the Plaintiff has had ample time to file a complaint, the Plaintiff's motion is DENIED and the case is DISMISSED.  However, given the lenient pleading standards for *pro se* plaintiffs in this Circuit, the Plaintiff is granted one opportunity to file a motion to reopen the case, provided that the motion to reopen is accompanied by a second proposed amended complaint that sufficiently alleges the factual basis to maintain legally cognizable claims in this matter.  The Plaintiff has twenty-one (21) days from the date of this order to file such motion, together with the second proposed amended complaint and to serve the complaint on the Defendants pursuant to the Federal Rules of Civil Procedure.  The Clerk is directed to close this case.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: May 19, 2014